American Plaster Drill Company, complainant-appellant,

*v.*

William H. Francisco et al., defendants-appellants; Recreational Development Corporation, defendant-appellant.

[Argued February term, 1931. Decided May 18th, 1931.]

*Mr. Lionel R. Kristeller* and *Mr. Merritt Lane,* for the American Plaster Drill Company.

*Mr. Dougal Herr,* for William H. Francisco et al.

*Messrs. Smith & Slingerland,* for the Recreation Development Company.

The opinion of the court was delivered by

Lloyd, J.

These appeals bring before this court a decree of the court of chancery in a cause wherein the complainant below, the

American Plaster Drill Company, sought the specific performance of an agreement made June 11th, 1924, between the defendants Franciscos and the Recreational Development Corporation for the sale of lands comprising a tract of one hundred and fifty-seven acres in West Caldwell, Essex county, complainant being the assignee of the Recreation Development Corporation, vendee.

. The parties defendant to the bill of complaint were the Recreation Development Corporation, the 'vendee named in the contract, and William H. and Richard Francisco and their wives, the vendors. Later Dryden and his associates were permitted to intervene as parties defendant.'

The contract was in writing and called for the payment of $75,000 as the purchase price; $500 payable on the execution' of the agreement and subsequent sums aggregating $19,500 payable over a period of months until a balance of $55,000 remained to be paid, which last named sum was to be secured by a five-year mortgage. 'The deed was to be delivered when the $20,000 had been paid. The contract gave the vendee the right of immediate possession for the purpose of developing the lands for a golf links, tennis courts and erection of 'a club house and for no other purpose.

The moving spirit in the whole transaction and substantially the only stockholder in the Development Corporation was Joseph W. Donaldson. That corporation was organized on the same 'day that the agreement was made. A month later Donaldson caused another corporation to be organized under the general corporation laws and named the Ferncliff Golf and Country Club, Incorporated, and in this also he was substantially the only stockholder. The golf club was formed to establish an association of members as a golf and 'country club, and to it a lease was made of the property by the Development Corporation for a 'term of twenty years at the yearly rental of $15,000. Donaldson then had the golf club adopt by-laws of its own and also adopt other by-laws "for the association of members of Ferncliff Golf and Country Club," the first section of the by-laws concerning the latter reading

that "this association shall be known as the Ferncliff Golf and Country Club." It is to be noted that the only distinction in the names of the incorporated and unincorporated bodies is that in the latter name the abbreviated word, "Inc.," is omitted.

Immediately after these steps were taken Donaldson began a campaign to obtain members of the unincorporated association, and, as the learned vice-chancellor aptly says, the evidence clearly indicated a campaign that might be more appropriately characterized as one to swindle the unwary. The campaign was successful and resulted in the securing of large numbers of members who paid in approximately $75,000. The club was held out by Donaldson, representing the Development Corporation, as the owner of the property. There seems to have been no suggestion apprising the members of the agreement of sale, of the lease to the club incorporated, of the sales agreement or its unpaid purchase price. Even the selection of the association name, identical with the corporate club name, leaving out only the letters "Inc.," was studiously made to deceive and defraud.

In the early fall of 1925 the duped members discovered the deception that had been practiced and on their complaint Donaldson proceeded to make offers whereby the club might become the owner of the property. These offers came to nothing. In the January following, the Development Corporation agreed to sell the property to the complainant, the American Plaster Drill Company, subject to the lease to the golf club and to the rights of the members to use the premises, and on the same day assigned to it the sales contract with the Franciscos. Immediately following, Dryden, on behalf of the club members, filed a bill in chancery praying appointment of a receiver for the two companies, an accounting and an injunction restraining the Franciscos from disposing of the property, and in this suit a *lis pendens* was filed.

In April, 1926, complainant below tendered itself ready to complete the purchase provided the Franciscos would cause the *lis pendens* in the Dryden suit to be canceled. This ten-

der was not accepted. An ejectment was then started by the Franciscos for the recovery of the premises and this was followed by the bill of complaint in the present case. By order in this cause the ejectment proceeding was stayed and a receiver was appointed for the property.

The learned vice-chancellor who had before him the written record of the case (the proofs having been taken before another vice-chancellor, since deceased), found as a fact that the Development Corporation and the golf club were mere *alter egos* of Donaldson, and that with him they engaged in a scheme to defraud the members of the club, and advised a decree that the bill be dismissed unless within twenty days the complainant should file a written consent to one of two propositions: (1) that the complainant should agree to pay to a master to be designated by the court the sum of $75,000 for the reimbursement of the defrauded members of the golf club, or (2) that the complainant agree to comply with the contract of sale and the assignment, and to execute and deliver to a corporation to be formed, in which the members of the golf club should have equal rights, lease of the land for the term of the joint lives of the nine hundred and twenty members upon the payment of reasonable greens fees to be settled by the court. Neither condition was acceptable to any of the parties in interest, and the result is the appeals now before us.

Application for specific performance of a contract for the sale of lands is addressed to the discretion of the court of chancery, and he who comes into equity in such causes, of all others, must do so with clean hands. It clearly appears in the present case that immediately upon acquiring the physical possession of the lands in question, Donaldson and the Development Corporation began to use it in a scheme to deceive and defraud. The complainant below stood in the shoes of the Development Corporation and acquired no higher or different rights than those possessed by it. Where, as here, such misuse of the property was made, we think the learned vice-chancellor commendably endeavored to protect the de-

frauded members of the golf club. In doing so, however, we think he went beyond the equities of the case in according rights of a conditional character to the complainant as the means of rectifying the wrongs inflicted by its assignor, in the face of objection by both the Franciscos and the members of the golf club. To grant specific performance would by implication give judicial sanction to the fraud and deception of Donaldson and the Development Corporation and enable them to still further use the property to the detriment of the defendant Dryden and his associates.

Thus far we have only dealt with the case as its facts appear upon the equitable side, and upon this phase alone we think the prayer of the bill should have been denied and the bill itself dismissed. But it appears in the case that the tender of performance of the sale contract was coupled with a condition that the Franciscos remove the *lis pendens* which had been filed by the club members, and the present bill demands the specific performance of each and every term of the agreement, notwithstanding the *lis pendens*. The vendors had no control over the filing of the *lis pendens* or any present control of its removal. This being true, the bill might well have been dismissed on the ground that the Franciscos, without fault of their own, could no longer fully comply with the terms of the sales agreement.

The conclusion we reach is that upon grounds both equitable and legal the decree should be reversed and the bill dismissed, with costs.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Trenchard, Parker, Campbell, Lloyd, Case, Bodine, Daly, Van Buskirk, Kays, Dear, Wells, JJ. 12.